**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| JUAN JOVEL on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>TEAMSNAP, INC.,<br><br>　　　　　　　Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Juan Jovel ("Plaintiff"), on behalf of the putative Class, by his undersigned counsel, and for their Class Action Complaint against Defendant TeamSnap, Inc., alleges as follows:

## PRELIMINARY STATEMENT

1.　　This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant TeamSnap, Inc. ("Defendant" or "TeamSnap") arising from its deceptive and unfairly disclosed junk "Processing Fee" assessed on recreational sport registrations completed via Defendant's software.

2.　　Youth sports are an integral part of the lives of many American families, but in recent years the costs of participating in youth sports has risen steeply. One reason is that private companies have become involved in the administration of youth sports, oftentimes forcing families to pay junk fees or forgo participating in youth sports altogether.

3.　　TeamSnap offers sports management technology services to youth sports organizations throughout the United States. As part of its service, it provides youth sports leagues

1

with an online enrollment platform through its TeamSnap service. The TeamSnap service is paid for by the youth sports organization that seeks to use the software, and parents or guardians of youth players are then instructed that they *must* use the TeamSnap service to register their children in the organization's sports offerings. TeamSnap makes it infeasible for parents or guardians from signing up in alternative manners that would allow them to avoid paying the Processing Fee. Through such agreements, TeamSnap acquires a captive audience of families who have no choice but to use their services.

4.      It then imposes undisclosed, deceptive, and unfair junk fees on families who have no choice but to pay them. By this conduct, TeamSnap has engineered a "pay junk fees to play" scheme. Kids can't play their chosen youth sports unless their parents pay the junk fee unilaterally set by Defendant with zero relationship to the service actually being provided.

5.      Throughout the entirety of the youth sports enrollment process, TeamSnap displays a single price for registration for a youth sport to the parent or guardian, without any additional fee.  Reasonable consumers like Plaintiff proceed through check out without ever becoming aware of any additional fees assessed by Defendant.

6.      Then, at checkout, and only after consumers have completed a comprehensive enrollment process wherein a single price for the sport is displayed, TeamSnap surreptitiously imposes a so called "Processing Fee," which amounts to a percentage of the cost of the sport. The Processing Fee is added very late in the registration process in order to ensure it is unseen by consumers like Plaintiff.

7.      It is false and deceptive for Defendant to surreptitiously add a "Processing Fee" at the end of the enrollment process, especially where it offers no explanation of the Processing Fee at any time during the enrollment or checkout process. The "Processing Fee" is only added without

2

comment or description as a line item just before a purchase is completed after a multi-step process without any mention of the fee.

8.    Worse, the Processing Fee itself is a sham, a classic "junk fee." The "online processing" provided by TeamSnap, which is signing up for and managing communications regarding youth sports, is the entire service that TeamSnap provides—and it is a service that the youth sports leagues are already paying Defendant for. There is no additional "online processing" service provided to parents or guardians who register. The Processing Fee is merely a second payment—in the form of a junk fee—for the service that the sports leagues are already paying for.

9.    By hiding the mis-named and deceptive fee at the very last step of the sale, Defendant has raked in millions of dollars in Processing Fees at the expense of consumers stuck with no other choice for registering their child for a sport.

10.    As a result of Defendant's unfair and deceptive conduct, Plaintiff and the proposed class have suffered damages. They purchased sports enrollments they otherwise may not have bought and paid fees they otherwise would not have paid, had they not been drawn in by Defendant's deceptive bait-and-switch scheme.

11.    Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay the so-called Processing Fee.

## PARTIES

12.    Plaintiff Juan Jovel is a resident and a citizen of Frederick, Maryland.

13.    Defendant TeamSnap, Inc. is a software provider for various sports leagues throughout the United States, including youth sports organizations. It is headquartered in Boulder, Colorado.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

      a.     the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

      b.     at least one member of the proposed class is a citizen of a State other than Colorado, § 1332(d)(2)(A); and

      c.     the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

15.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because TeamSnap is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.     Overview of TeamSnap's Software

16.     Society recognizes participation in youth sports as an important component of raising physically and mentally healthy children.

17.     According to the Aspen Institute's Project Play Annual Report for 2023, children who are physically active reported more excitement, happiness and motivation, and those who are inactive reported greater nervousness, anxiety, worry and depression.  See Aspen Institute, State of Play 2023 Report, available at https://projectplay.org/state-of-play-2023/health-trends.

18.     Due to the high cost of youth sports, low-income families struggle to afford the costs to participate. Half of survey respondents who played youth sports or who have children who have played said they have struggled to afford the costs to participate. The issue impacts a broad

4

swath of Americans of all backgrounds, including 66% who are Latino/a, 62% of 35-49-year-olds, 58% of those with high school educations, and 57% of lower-income adults. See Aspen Institute, State of Play 2023 Report, available at https://projectplay.org/state-of-play-2023/costs-to-play-trends.

19.     Through its deceptive late addition of a so-called "Processing Fee", TeamSnap unfairly increases costs for those already struggling to afford the benefits of youth sports.

20.     Defendant TeamSnap offers its technology service to youth sports organizations. At issue in this complaint is TeamSnap's player registration technology service.

21.     The TeamSnap software is used by sports organizations across the country as a tool to register for children for youth sports including but not limited to soccer, baseball, softball, football, flag football, basketball, volleyball, hockey, lacrosse, sports camps, and wrestling.

**B.     TeamSnap Markets Services to Youth Sports Organizations**

22.     Youth sports organizations engage TeamSnap to manage registration for their members.

23.     TeamSnap markets heavily to such organizations, promising ease and convenience for the youth sports organization, including online and electronic management of registration and payments.

24.     Youth sports organizations pay TeamSnap for these services, usually in the form of an annual subscription and payment processing charges.

25.     Youth sports organizations are not reasonably informed that TeamSnap will assess their registrants *additional* junk fees for using the very service the youth sports organization is already paying TeamSnap for.

26.     Once engaged by the youth sports organization, sign ups and communications for that organization then occur on the TeamSnap platform.

C.     **TeamSnap's Processing Fee Scheme**

27.     TeamSnap charges consumers a hidden Processing Fee beyond the advertised price of the sport. The hidden Processing Fee is not disclosed when the initial sport price is displayed. In fact, TeamSnap does not disclose the Processing Fee to consumers until the very last step in the purchase – after the consumer has already gone through several steps to commit to the purchase of registering for the youth sport.

28.     To make matters worse, even at the point of purchase, TeamSnap still does not disclose the purpose of the Processing Fee. That is, of course, because the Processing Fee has no real purpose where the sports league itself is paying for use of TeamSnap software. The Processing Fee is not tethered to any actual "online processing" or expense. Instead, the Processing Fee is a pure profit-generator.

29.     Here is how TeamSnap's deception works: When registering a child for youth sports, consumers must create an account. Then, consumers input their child's personal information and their child's team preferences. Throughout that process, a single price for the youth sport is displayed. After the consumer navigates this multi-step series of screens, the consumer is presented with a screen that purports to show the "Participant Fees", and which does not display any processing fee whatsoever.

30.     On the subsequent screen, the consumer is presented with a "Checkout" page, which again, displays the purported "Total" cost of the support:

6



31.     Only at the very end of the registration process are consumers, for the very first time and hidden as a line item, informed of the "Processing Fee":



32.     Thus, by the time consumers are confronted with a total price that includes the added Processing Fee, consumers have already taken several steps to commit to the transaction

8

including creating account, inputting personal information about their children, inputting team preferences and playing positions, and deciding whether to purchase sport related gear.

33.     The "Processing Fee" is never reasonably disclosed to consumers until it shows up as a line item at the very end in their shopping cart—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that an Processing Fee will be imposed on their purchases.

34.     The amount of the "Processing Fee" changes depending on the consumer's method of payment. At no point in the registration process is the consumer provided with any information about the processing fee including what "processing" it purportedly covers and how the processing fee is calculated.

**D.     The Processing Fee is a Junk Fee That Violates Federal Guidance.**

35.     TeamSnap's Processing Fee is precisely the type of "Junk Fee" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3

36.     As the Federal Trade Commission said recently in its effort to combat Junk Fees,

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately

disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, <u>FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees</u>, , October 11, 2023, available at <u>https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees</u>.

37.      In its own effort to combat junk fees, the State of New York recently passed N.Y. Arts & Cult. Aff. Law § 25.07 concerning fees associated with tickets to sports and concerts. Under that law, "[t]he price of the ticket shall not increase during the purchase process, excluding reasonable fees for the delivery of non-electronic tickets based on the delivery method selected by the purchaser, which shall be disclosed prior to accepting payment therefor." N.Y. Arts & Cult. Aff. Law § 25.07(4). Accordingly, if the consumer selects to purchase a ticket electronically, at the start of the transaction, the total ticket price shall not increase during the period it takes the consumer to purchase the ticket (e.g., finish the online transaction).  The "All-In Price" must be disclosed to the consumer before the consumer selects the ticket for purchase. Similarly here, the "All-In Price" should have been displayed to the consumer throughout the enrollment process.

38.      In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, <u>.com Disclosures: How to Make Effective Disclosures iN Digital Advertising</u> at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

39.     Defendant violates federal guidance by adding the Processing Fee as a line item well after the consumer "add[s] to shopping cart", and by failing to disclose the nature of the Processing Fee and whether consumers are getting any benefit at all from the fee charged. Worse yet, there is no actual "processing" performed where the youth sports league itself pay for TeamSnap's service.

40.     The Processing Fee provides no additional value to consumers not already paid for by the league for which they are signing up.

41.     The Processing Fee itself is a sham, a classic "junk fee." The online processing provided by TeamSnap, which is signing up for and managing communications regarding youth sports online, is a service that the youth sports leagues are already paying Defendant for. There is no additional "processing" provided to parents or guardians who register. The Processing Fee is merely a second payment—in the form of a junk fee—for the service for which that the sports leagues are already paying.

42.     Parents or guardians of youth players are then instructed that they *must* use TeamSnap service to register their children in the organization's sports offerings. TeamSnap prohibits parents or guardians from signing up in alternative manners that would allow them to avoid paying the Processing Fee. Through such agreements, TeamSnap acquires a captive audience of families who have no choice but to use their services.

43.     Defendant imposes undisclosed, deceptive, and unfair junk fees on families who have no choice but to pay them. By this conduct, TeamSnap has engineered a "pay junk fees to play" scheme. Kids can't play their chosen youth sports unless their parents pay the junk fee unilaterally set by Defendant with zero relationship to the processing actually being provided.

E.     **Plaintiff's Experience**

44.     On or about March 28, 2024, Plaintiff registered her child to play flag football through a youth sports organization.

45.     At the time she completed the registration, the Processing Fee was hidden and not displayed until the ordering process was substantially complete. The Processing Fee amounted to $10.08.

46.     Plaintiff did not notice that Defendant had increased the price of the transaction at the last minute.

47.     Similarly, on May 21, 2024, Plaintiff ordered a $130 replacement uniform for her child through a youth sports league that used TeamSnap.

48.     At the time she completed the uniform order, the Processing Fee was hidden and not displayed until the ordering process was substantially complete. The Processing Fee amounted to $5.72.

49.     Had Defendant disclosed the Processing Fee at an earlier time in the enrollment process, and disclosed the nature and amount of the Processing Fee, Plaintiff may have made a different choice with respect to whether to use TeamSnap to purchase her child's uniform and would have inquired with the league regarding registration by alternate means.

## CLASS ALLEGATIONS

50.     Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

> All persons who, during the applicable statute of limitations, were charged a
> Processing Fee by Defendant.

51.     Plaintiffs also brings alternative state subclasses on behalf of Colorado and Maryland residents.

52.      The Nationwide Classes and alternative state subclass defined above are collectively referred to herein as the "Classes." Plaintiff reserves the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

53.     Excluded from the Classes are Defendant, its consumers, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

54.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

55.     The claims of the representative Plaintiff are typical of the claims of the Classes he seeks to represent in that the representative Plaintiff, like all members of the Classes, were charged improper and deceptive fees as alleged herein. The representative Plaintiff, like all members of the Classes, were damaged by Defendant's misconduct in that they were charged hidden Processing Fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. And Defendant has no unique defenses that would apply to Plaintiff and not the Classes.

56.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual members of the Classes.

57.     The questions of law and fact common to the Classes include, but are not limited to, the following:

a.      Whether Defendant's assessment of Processing Fees was unfair, deceptive, or misleading;

b.      The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

c.      Whether Plaintiff and the Classes are entitled to declaratory and injunctive relief and the nature of that relief.

58.     Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful Processing Fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

59.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

60.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual member of the Classes' claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Classes could afford to seek legal redress individually for the claims

alleged herein.  Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy.

61.     Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

62.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

63.     Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Classes as a whole.

64.     All conditions precedent to bringing this action have been satisfied and/or waived.

65.     Application of Colorado law to the nationwide class is neither arbitrary nor unfair because Colorado has a significant interest in the claims of Plaintiffs and the class.

66.     The State of Colorado has a significant interest of regulating the conduct of businesses within its borders.

67.     Given Colorado's significant interest in regulating the conduct of businesses within its borders, choice of law principles dictate Colorado law should apply even to out-of-state residents.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

68.     Plaintiffs incorporate the preceding paragraphs of this Complaint as if fully set forth herein.

69.     No contract provision authorizes TeamSnap to be able to impose hidden Processing Fees on its customers.

70.     TeamSnap breached the terms of its contract with consumers by charging an additional Processing Fee.

71.     Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

72.     Plaintiffs and members of the Class have sustained damages as a result of TeamSnap's breach of the contract and breach of the implied covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
**Violation of the Colorado Consumer Protection Act**
**(On Behalf of Plaintiff and the Class)**

73.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

74.     Plaintiff and other members of the Class are consumers within the meaning of the Colorado Consumer Protection Act ("CCPA"). Defendant is a seller within the meaning of the CCPA.

75.     Defendant's conduct, as described herein, constitutes an unfair and deceptive trade practice, as defined in Colo. Rev. Stat. § 6-1-105. Specifically, as described herein, Defendant engaged in unfair and deceptive practices by adding the Processing Fee until the very end of the registration

16

process, often causing consumers to miss its assessment entirely. Moreover, consumers are not paying for any online processing where the youth league itself is paying for TeamSnap's service.

76.     TeamSnap's unfair and deceptive conduct occurred, and continues to occur, in the course of TeamSnap's business.

77.     TeamSnap's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

78.     Plaintiff relied on Defendant's misrepresentations as discussed above.

79.     Had Defendant disclosed the Processing Fee at an earlier time in the enrollment process, and disclosed the nature of the Processing Fee, Plaintiff may have made a different choice with respect to whether to use TeamSnap to purchase her child's uniform and would have inquired with the league regarding registration by alternate means.

80.     Plaintiff seeks judicial orders of an equitable nature against Defendant including, but not limited to, orders declaring such practices as are complained of herein to be unlawful, unfair, fraudulent and/or deceptive and enjoining Defendant from undertaking any further unfair, unlawful, fraudulent and/or deceptive acts or omissions.

81.     Defendant's practices have injured Plaintiff. Plaintiff therefore seeks damages, statutory damages, and attorneys' fees to the full extent allowed by law.

### THIRD CLAIM FOR RELIEF
**Violation of Maryland's Consumer Protection Act,
MD. Code Comm. Law §§ 13-101, *et seq.*
(Asserted on Behalf of Plaintiff and the Maryland Class)**

82.     Plaintiff is a "consumer" pursuant to Md. Code Comm. Law § 13-101(c)(1).

83.     Defendant is a "merchant" and "person" pursuant to Md. Code Comm. Law § 13-101(g)-(h).

84.    The CPA prohibits a person from engaging "in any unfair, abusive, or deceptive trade practice" including in:

      a.     The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services; and

      b.     The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty or consumer services.

Md. Code. Comm. Law § 13-303.

85.    Defendant's policy and practice of charging Processing Fees as alleged herein is a violation of the CPA, including but not limited to:

      a.     False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

      b.     Representation that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have;

      c.     Representation that consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not;

      d.     Failure to state a material fact if the failure deceives or tends to deceive;

      e.     Advertisement or offer of consumer goods, consumer realty, or consumer services without intent to sell, lease, or rent them as advertised or offered;

      f.     False or misleading representation of fact which concerns a price in comparison to one's own price at a past or future time;

      g.     Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods, consumer realty, or consumer service;

      h.     Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the subsequent performance of a merchant with respect to an agreement of sale,

lease, or rental;

86.     Any practice prohibited by the CPA is a violation of the CPA, whether or not any consumer in fact has been misled, deceived, or damaged as a result of that practice. Md. Code. Comm. Law § 13-302.

87.     Plaintiff relied upon misrepresentations, misleading statements, deceptive practices, and false promises by Defendants which resulted in injury to her.

88.     Plaintiff has suffered an ascertainable loss of money as a result of the use or employment Defendants of a method, act, or practice prohibited or declared to be unlawful by the provisions of the CPA.

89.     Plaintiff's actual out-of-pocket loss was proximately caused by Defendant's violation of the CPA.

90.     Should Plaintiff prevail in this action, reasonable attorneys' fees and costs are to be awarded pursuant to Md. Code. Comm. Law § 13-408(b).

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On behalf of the Class)**

91.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

92.     To the detriment of Plaintiffs and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

93.     Plaintiffs and the Class conferred a benefit on Defendant when they paid Defendant the Processing Fee, which they did not agree to and could not reasonably avoid.

94.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

95.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

96.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the members of the Class seek an Order:

1.     Certifying the proposed Class pursuant to Rule 23;

2.     Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.     Declaring the Defendant has committed the violations of law alleged herein;

4.     Providing for any and all injunctive relief the Court deems appropriate;

5.     Awarding statutory damages in the maximum amount for which the law provides;

6.     Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7.     Providing for any and all equitable monetary relief the Court deems appropriate;

8.     Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9.     Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

10.     Awarding pre- and post-judgment interest to the extent the law allows; and

11.     Providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues so triable.


Dated: July 10, 2024                     Respectfully submitted,

                                        */s/ Sophia Goren /Gold*
                                        Jeffrey D. Kaliel
                                        Amanda J. Rosenberg
                                        KALIELGOLD PLLC
                                        1100 15th Street NW, 4th Floor
                                        Washington, D.C. 20005
                                        Tel: (202) 350-4783
                                        jkaliel@kalielpllc.com
                                        arosenberg@kalielgold.com

                                        Sophia Goren Gold
                                        KALIELGOLD PLLC
                                        950 Gilman Street, Suite 200
                                        Berkeley, CA 94710
                                        Tel: (202) 350-4783
                                        sgold@kalielgold.com

                                        *Attorneys for Plaintiff and the Proposed Class*