IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-1906-CNS-TPO

JUAN JOVEL,

    Plaintiff,

v.

TEAMSNAP, INC.,

    Defendant.

## ORDER

Before the Court is Defendant's Motion to Compel Arbitration and to Dismiss Plaintiff Juan Jovel's class-action complaint. ECF No. 18. For the reasons set forth below, the Court GRANTS Defendant's Motion to Compel Arbitration, DENIES as moot Defendant's Motion to Dismiss, and STAYS these proceedings, pending arbitration.

### I.   BACKGROUND[1]

Defendant TeamSnap, Inc. is a software company that operates a mobile application (app) that is designed to simplify management for team sports and leagues.[2] ECF No. 19, ¶ 5 (Decl. of Laura Greene). The app allows anyone over the age of 18 to create a league, group, or team and then invite others to join. *Id.*, ¶ 6. Invitation emails

---

[1] The background facts are taken from materials submitted in connection with the parties' briefing.

[2] TeamSnap also operates a website for the same purpose, ECF No. 18 at 2, but for efficiency, the Court will refer to both the app and the website as "the app" because the differences between the two are not material here.

contain the hyperlinked words "accept invite" that, if clicked, takes the prospective user to the app's signup screen. *Id.*, ¶¶ 15–16.

The signup screen has a dialog box that states: "I agree to TeamSnap's Terms of Service and Privacy Policy." ECF No. 18-7 (sample signup screen). The words "Terms of Service" and "Privacy Policy" are offset in blue text, indicating a hyperlink that, if clicked, would take the user to the full text of these documents. ECF No. 19, ¶¶ 17–18. Before a prospective user can join or create a league, group, or team, they must create an account and agree to the Terms of Service (TOS) by clicking the checkmark next to the dialog box.[3] *Id.*, ¶ 7. If a user tries to continue without clicking the checkmark, the screen displays the message: "You must agree to the terms before proceeding" in red text. *Id.*, ¶ 20. The TOS constitute the only contract between TeamSnap and users. *Id.*, ¶ 8.

Plaintiff Juan Jovel was a "consumer" of the app and filed this lawsuit, alleging that Defendant charged junk fees.[4] ECF No. 32 (response) at 3–4. In response to the lawsuit, Defendant filed the motion before the Court and argues that the TOS to which Plaintiff agreed contains a valid and enforceable arbitration agreement that requires the arbitration of Plaintiff's claims. ECF No. 18 at 7–8. Plaintiff essentially argues that Defendant did not meet its evidentiary burden to compel arbitration, and so the motion cannot be granted.

---

[3] These sorts of agreements, where one checks a box indicating agreement to terms of service on a website, are called "clickwrap agreements." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012) (defining clickwrap agreements as "agreements requiring a computer user to 'consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction'" (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007)).

[4] Plaintiff never affirmatively admits that he created an account. *See generally* ECF No. 32. However, because a user cannot use the app without creating an account, and because Plaintiff would have no basis to sue if he did not use the app, the Court assumes Plaintiff created an account with TeamSnap.

ECF No. 31 at 10–15.

## II. LEGAL STANDARD

Under the Federal Arbitration Act (FAA), agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided." 9 U.S.C. § 2. When evaluating motions to compel arbitration, courts begin with the "fundamental proposition that 'arbitration is a matter of contract,'" and a party cannot be required to submit to arbitration unless they have agreed to do so. *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

When deciding motions to compel arbitration, a court must first determine whether an enforceable agreement to arbitrate exists. *Brayman*, 83 F.4th at 832. Second, a court determines the scope of the agreement. *Id.* (internal citations omitted). Courts apply a framework similar to the framework used to decide motions for summary judgment. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). Thus, a court may grant a motion to compel arbitration if "there are no genuine issues of material fact regarding the parties' agreement." *Id.* (quoting *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1283 (10th Cir.1997)). The movant bears the burden of proof, Fed. R. Civ. P. 56(a), and courts give the nonmovant the "benefit of all reasonable doubts and inferences." *Hancock*, 701 F.3d at 1261 (citing *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51, 54 n.9 (3d Cir. 1980)). However, the "mere existence" of an alleged factual dispute is not a "*genuine* issue of *material* fact." *Est. of Larsen ex rel. Sturdivan v.*

3

*Murr,* 511 F.3d 1255, 1261 (10th Cir. 2008) (emphasis in original) (citing *Scott v. Harris,* 550 U.S. 372, 379 (2007)). Instead, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986)).

### III. ANALYSIS

Defendant argues that Plaintiff entered into a valid and enforceable arbitration agreement. ECF No. 18. Plaintiff cursorily asserts that he "did not agree to arbitrate his claims" but does not support this assertion with any evidence. ECF No. 32 at 9. Plaintiff merely argues that Defendant did not meet its evidentiary burden because it submitted only "inadequate and inadmissible evidence" in support of its motion. *Id.* at 10–16. Plaintiff raises myriad objections related to this evidence, *see* ECF No. 32-3, to which Defendant responds. ECF No. 38. Because Defendant's evidence is germane to the resolution of its motion, the Court first addresses Plaintiff's arguments about its inadequacy. Ultimately, the Court concludes that Defendant's evidence is sufficient and establishes that an enforceable arbitration agreement exists. And because this agreement delegates questions of arbitrability to the arbitrator, the Court declines to rule on its scope.

### A. Defendant's Evidence Supporting Motion to Compel Arbitration

In support of its motion, Defendant submitted as evidence: Laura Greene's declaration; business records related to Plaintiff's TeamSnap account creation; the TOS; and the Judicial Arbitration and Mediation Services (JAMS) rules the TOS incorporate by reference.[5] Plaintiff raises arguments in four categories to assail this evidence. The Court

---

[5] *See* ECF No. 19 (Greene declaration); Exhibit A, ECF No. 19-1 (records regarding the invitation email

addresses each category in turn.

### 1. The Sufficiency of Greene's Declaration and Personal Knowledge

Plaintiff argues that Greene's "lack of personal knowledge" regarding the creation of Defendant's invitation email, signup screen, website, data storage warehouse, and the TOS "is detrimental" to Defendant's motion. ECF No. 32 at 11. Relatedly, Plaintiff argues that Greene's positions as an employee of Defendant have only dealt with the business-to-business side of Defendant's business, and not the individual users. *Id.* Plaintiff essentially argues that Greene's lack of personal knowledge requires that the Court not consider her declaration and its exhibits here. *See* ECF Nos. 32, 32-3. However, as Defendant notes, ECF No. 37 at 4–6, a careful examination of Greene's declaration, and of the evidence supporting it, demonstrates that she has sufficient personal knowledge.

A "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Further, although a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," a "witness's

---

sent to Plaintiff); Exhibit B, ECF No. 19-2 (spreadsheet summarizing certain data, including data showing that Plaintiff created an account and accepted terms and conditions on April 8, 2021); Exhibit C, ECF No. 19-3 (confirmation that Plaintiff accepted the invitation email); Exhibit D, ECF No. 18-5 (sample invitation email); Exhibit E, ECF No. 19-4 (records showing that Plaintiff accepted the invitation and created an account on April 8, 2021); Exhibit F, ECF No. 18-7 (sample signup screen, with hyperlinked Terms of Service and an "I agree" checkbox); Exhibit G, ECF No. 18-8 (sample signup screen of what a user would see if they did not check the "I accept" box); Exhibit H, ECF No. 18-9 (sample signup screen with the "I accept" box checked); Exhibit I, ECF No. 19-5 (showing Plaintiffs' "Terms and Conditions Acceptance" on April 8, 2021); Exhibit J, ECF No. 18-11 (TeamSnap's TOS in effect at the time Plaintiff created his account); Exhibit K, ECF No. 18-12 (TeamSnap's current TOS); and Exhibit 2, ECF No. 18-13 (JAMS Streamlined Arbitration Rules & Procedures).

5

own testimony" may prove that personal knowledge. Fed. R. Evid. 602. A court may infer a declarant's personal knowledge from their position in a company. *Warner Recs. Inc. v. Charter Commc'ns, Inc.*, No. 19-CV-00874-RBJ-MEH, 2022 WL 1567142, at *7 (D. Colo. May 18, 2022) (citing *Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1227 (D. Kan. 2008)). A declarant can also establish personal knowledge by reviewing documents, even when the declarant did not create the documents. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005).

Greene has worked for TeamSnap for over ten years and has held many different positions in the company. ECF No. 19, ¶¶ 2–3. Contrary to Plaintiff's argument, ECF No. 32-3 at 1–2, these statements about Greene's employment are relevant because they make the facts given in her declaration more probable than they would be otherwise. *See* Fed. R. Evid. 401. Further, Greene provided background about TeamSnap and its operations, ECF No. 19, ¶¶ 5–8, and explained that she is "familiar with TeamSnap's products and services, as well as TeamSnap's user account creation process, user interface, and TeamSnap's Terms of Service." *Id.*, ¶ 4. Importantly, she declared that "TeamSnap maintains records related to its users in the ordinary course of business. This information includes, but is not limited to, information regarding how the user initially joined TeamSnap, when the user joined TeamSnap, the user's assent to TeamSnap's TOS, [and] which teams that user has been associated with . . . ." *Id.*, ¶ 9. Greene affirmed that she "review[ed]" these business records and, under penalty of perjury, had personal knowledge about them. *Id.*, ¶ 10. The business records accompany the declaration as exhibits.

6

Greene's ten-year history as an employee of TeamSnap in a variety of roles supports a finding that she has personal knowledge here. *See Warner Recs. Inc*, 2022 WL 1567142, at *7 (stating that personal knowledge may "be inferred from a person's position in the company"). Further, her review of the exhibits, despite the fact she was not personally involved in creating them, supports the same finding. *See Bryant*, 432 F.3d at 1123 (stating that a declarant can establish personal knowledge by reviewing documents, even when the declarant did not create the documents). The cases Plaintiff cites do not compel a different conclusion.[6]

The Court concludes that Ms. Greene has the "requisite personal knowledge to attest to the statements set forth in [her] declaration." *McGuire v. CarMax Bus. Servs. LLC*, No. 1:23-CV-02938-NYW-SBP, 2024 WL 3897073, at *13 (D. Colo. Aug. 16, 2024) (finding the declarant, who had 14 years of experience with the company, had sufficient personal knowledge when he "provided detailed information about his job duties" and "familiarity with the . . . enrollment process"), *report and recommendation adopted*, No. 23-CV-02938-NYW-SBP, 2024 WL 4027964 (D. Colo. Sept. 3, 2024).

---

[6] In *Austin v. Equifax Info. Servs., LLC*, the affiant did not work directly for the company but rather an "affiliate." No. 3:22CV707, 2023 WL 8646275, at *2 (E.D. Va. Dec. 14, 2023). Further, there was "[n]othing in [the affiant's] job description" for the affiliate company that "disclosed personal knowledge," and none of the documents on which the affiant purported to rely were identified, so the court could not "test the merits of the asserted personal knowledge claimed to be based on them." *Id.* at *7. Here, Greene works directly for TeamSnap and has for ten years. ECF No. 19 at 2–3. She provided specific information about the roles that she has had in the company and her personal familiarity with TeamSnap's account creation process. *Id.*, ¶¶ 2–10. Importantly, the business records she relies on to support her personal knowledge are attached to the declaration for the Court to test the merits of her personal knowledge. *See also Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 604–04 (3d Cir. 2020) (discussing a declarant who could only testify about screenshots as they existed "some eighteen months" after the matter in dispute occurred and related to a company for which he did not work).

*2. The Signup Screen*

Plaintiff next argues that, because the sample signup screen is not "the actual screen Plaintiff would have seen when he created his TeamSnap account in April 2021," Defendant cannot satisfy its evidentiary burden with a "substantially similar" sample signup screen. ECF No. 32 at 12. Defendant argues that the signup screen it submitted is sufficient. ECF No. 37 at 6–9. The Court agrees with Defendant.

Greene affirmed that the sample signup screen Defendant submitted in support of its motion is "substantially similar" to what Plaintiff would have seen when he created his account. ECF No. 19, ¶ 16 (citing ECF No. 18-7). Plaintiff pushes back, arguing that the sample signup screen is insufficient because "TeamSnap only keeps track of 'substantial changes' but not 'small verbiage changes,'" and the latter "could be substantial in the context of a clickwrap agreement." ECF No. 32 at 13. However, to substantiate his argument, Plaintiff relies on Greene's deposition testimony about changes Defendant has made to the *invitation email*. *Id.* (citing ECF No. 31-7 at 8). Regarding the sample signup screen, Greene testified that, aside from the placeholder team name and the placeholder email address, the sample signup screen is what Plaintiff would have seen when he created his account.[7] *Id.* at 9. Moreover, she testified that TeamSnap's signup screen remained unchanged between 2019 and September 2024, a period which encompasses the creation of Plaintiff's account in April 2021. *Id.* Plaintiff does not dispute any of this.

---

[7] Ms. Greene testified in her deposition that the sample signup screen "is for [W]ake [B]aseball. The screen that [Plaintiff] would see would look like this with the team name in which they were invited to join instead of [W]ake [B]aseball and their email address" instead of Greene's. ECF No. 37-1 at 9.

8

*See generally* ECF No. 32.

Plaintiff cites several cases to argue that the "substantially similar" sample signup screen cannot be used to compel arbitration, but each case is distinguishable. For instance, *Snow v. Eventbrite, Inc.* involved a case in which the defendant attempted to rely on multiple, different versions of sample signup screens that had changed over time. No. 3:20-CV-03698-WHO, 2020 WL 6135990, at *5–6 (N.D. Cal. Oct. 19, 2020). The court noted that the defendant "would only be able to carry its burden if it could show what the agreements looked like during the period when the plaintiffs would have actually seen them," which it could not do. *Id.* at 6. Here, the undisputed evidence is that the signup screen Defendant used remained unchanged between 2019 and September 2024, and Exhibit F is that unchanged signup screen.[8] ECF No. 31-7 at 8–9. Thus, Defendant has demonstrated what the signup screen looked like during the period when Plaintiff would have actually seen it.[9]

---

[8] Plaintiff argues that the fact the sample signup screen in Exhibit F is undated calls its provenance into question. ECF No. 32 at 4. However, Greene affirmed that the sample signup screen is what Plaintiff would have seen in April 2021, and Plaintiff's only attempt to undermine this fact is by questioning her personal knowledge, which the Court addressed above. Plaintiff submitted no evidence to dispute Greene's testimony, and he must raise more than a "metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586–87.

[9] Plaintiff's other cases are similarly distinguishable. *See Mason v. Midland Funding LLC*, 815 F. App'x 320, 324–26 (11th Cir. 2020) (examining a case in which the declarant stated that an attached exhibit containing the *terms of the agreement itself*, rather than the clickwrap agreement or a sample of it, was similar to what the plaintiff saw); *Lopez v. Dave Inc.*, No. 22-CV-04160-VC, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022) (examining a case in which the defendant submitted two, differing sample sign-up screens and the defendant's declarant did "not explicitly state" that the either of the samples were what the plaintiff would have seen), *aff'd*, No. 22-16915, 2023 WL 8594393 (9th Cir. Dec. 12, 2023); *In re Stubhub Refund Litig.*, No. 20-MD-02951-HSG, 2021 WL 5447006, at *7–8 (N.D. Cal. Nov. 22, 2021) (examining a case in which the defendant "did not offer any screenshots" of sample sign-up screens so there was "insufficient evidence" to conclude that the users had constructive notice of the arbitration agreement); *Duncan v. Int'l Markets Live, Inc.*, No. 420CV00017RGEHCA, 2020 WL 6733636, at *5 (S.D. Iowa Nov. 6, 2020) (finding that the defendant had not provided any evidence that the plaintiff had "actually agreed to any terms"). Plaintiff also attempts to rely on *Davitashvili v. Grubhub Inc.*, No. 20-CV-3000-LAK, 2023 WL 2537777, at *6 (S.D.N.Y.

### 3. The Authenticity and Availability of the TOS

Plaintiff next argues that Greene's "testimony raises doubts as to the authenticity of [the] TOS in effect when Plaintiff created his account and whether he had access at that time." ECF No. 32 at 15. Defendant argues, and the Court agrees, that Plaintiff's assertions are "based on speculation [and] . . . should be rejected." ECF No. 37 at 9.

Plaintiff argues that Greene was not the one to use the "Wayback Machine" to access the TOS available at the time Plaintiff created his account and that she otherwise was uncertain about the TOS, its provenance, and the source of the TOS reflected in Exhibit J.[10] *Id* at 16. However, Greene affirmed that a "true and correct version of the TOS that [Plaintiff] agreed to on April 8, 2021, as captured by the Wayback Machine, is attached as Exhibit J." ECF No. 19, ¶ 23 (emphasis omitted). Although Defendant admits that Exhibit J "does not include the web capture of the TOS for April 8, 2021," the day Plaintiff created his account, Defendant also correctly notes that this does not mean that Exhibit J was not in effect then. ECF No. 37 at 9. Defendant points to versions of the TOS on the Wayback Machine from before and after April 8, 2021, and highlights that they are identical to Exhibit J. ECF No. 37 at 9–10. Greene verified that the TOS did not change until March 5, 2024—nearly three years after Plaintiff signed up for Defendant's platform. ECF No. 19, ¶ 26. After comparing Exhibit J and the two versions from the Wayback

---

Mar. 16, 2023), but after Plaintiff filed his response, the Second Circuit reversed the district court on the issue for which Plaintiff cites the district court decision. 131 F.4th 109 (2d Cir. 2025) (holding that a clickwrap agreement put users on sufficient notice to constitute a valid agreement).

[10] The Wayback Machine is an "online digital archive of web pages" "run by the Internet Archive, a nonprofit library in San Francisco." *U.S. v. Wirichaga-Landavazo*, No. 21-4070, 2022 WL 500651, at *2 n.2 (10th Cir. Feb. 18, 2022) (quoting *Valve Corp. v. Ironburg Inventions Ltd.*, 8 F.4th 1364, 1374 (Fed. Cir. 2021)).

Machine, and in light of Greene's undisputed testimony, the Court concludes that Exhibit J is the version of the TOS in effect when Plaintiff created his account.[11]

Next, Plaintiff raises vague doubts about whether he would have even been able to access the TOS the day he created his account, implying that there might have been a website glitch that prevented him from viewing the TOS. ECF No. 32 at 16. Importantly, though, Plaintiff does not affirmatively argue—much less attest—that there was a glitch or that he could not or did not access the TOS. *See id.* Further, Greene testified that TeamSnap had no records of website glitches on April 8, 2021, ECF No. 37 at 10 (citing ECF No. 37-1 at 11–12), and Plaintiff submitted no evidence to suggest that the TOS were not available on April 8, 2021. *See generally* ECF No. 37. Plaintiff must raise more than a "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Plaintiff has done no more than that here, and so his argument fails.[12]

### 4. Plaintiff's Objections

Plaintiff filed 15 objections to Defendant's evidence. ECF No. 32-3. Each generally relates to one of the three categories of arguments addressed above, and so the Court will not address each objection specifically. However, the Court notes that Plaintiff raises several hearsay objections, too, but these objections are misplaced. "Assuming, without deciding, that these materials are in fact hearsay, their exclusion from the record is not

---

[11] *Compare* Exhibit J  (ECF No. 18-11), *with* TeamSnap's TOS from March 5, 2021 (https://web.archive.org/web/20210305042302/https:/www.teamsnap.com/terms) *and* TeamSnap's TOS from April 23, 2021 (https://web.archive.org/web/20210423113807/https:/www.teamsnap.com/terms).

[12] Plaintiff attempts to rely on *Bojorquez v. Am. Bankers Ins. Co. of Fla.*, No. 23-CV-03164-PAB-SBP, 2024 WL 4277910, at *7 (D. Colo. Sept. 24, 2024), but that case is easily distinguishable because there, the *plaintiffs* "submitted declarations indicating that, '[w]hen purchasing my insurance, I saw nothing that made me aware of the existence of an arbitration provision.'" *Id.*  Plaintiff provided no such evidence here.

required." *McGuire*, 2024 WL 3897073, at *14 (explaining in detail how business records similar to those here fell under the "business records [hearsay] exception" of Fed. R. Evid. 803(6)). Although the Court does not address each of Plaintiff's objections specifically, the Court affirms that it has considered each and found them meritless.[13]

* * *

In sum, Greene has sufficient personal knowledge to support her declaration. Further, the exhibits meet the conditions of the business records hearsay exception under Federal Rules of Evidence 803(6) and are otherwise admissible. Conversely, Plaintiff has "not show[n] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid 803(6)(E). The Court therefore properly considers the declaration and the exhibits in analyzing the motion below.

### B. The Arbitration Agreement

Defendant argues that Plaintiff entered a valid and enforceable arbitration agreement that covers his claims concerning processing fees. ECF No. 18 at 7–8. The Court has determined that Defendant's evidence is sufficient and properly considered. As explained below, this evidence demonstrates that Plaintiff entered a valid and enforceable arbitration agreement with Defendant.

When determining the validity and enforceability of an arbitration agreement, federal courts apply state contract law principles. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The agreement here states that it is governed by Colorado law. ECF No. 18-11 at 6; ECF No. 18-12 at 8. In Colorado, contract formation requires "a

---

[13] The Court notes that neither party requested an evidentiary hearing.

manifestation of mutual assent." *Pierce v. St. Vrain Valley Sch. Dist. RE–1J,* 981 P.2d 600, 603 (Colo. 1999) (quoting Restatement (Second) of Contracts § 17(1) (A.L.I. 1981)). A court may imply a party's assent from "the totality of circumstances and the acts of the parties." *Macasero v. ENT Credit Union*, 533 P.3d 982, 988 (Colo. App. 2023) (quoting *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012), *cert. denied*, No. 23SC492, 2024 WL 2034637 (Colo. May 6, 2024).

When evaluating assent in the context of contracts formed using the internet, the "threshold issue" is whether the consumer had "reasonable notice, either actual or constructive," of the putative agreement's terms. *Id.* A party has constructive notice when they "abstain[] from inquiry when inquiry ought to be made" because "[w]illful ignorance is equivalent, in law, to actual knowledge." *Macasero*, 533 P.3d at 989 (quoting *Mackey v. Fullerton*, 4 P. 1198, 1200 (Colo. 1884)). Accordingly, Colorado law recognizes that "one generally cannot avoid contractual obligations by claiming that he or she did not read the agreement." *Loden v. Drake*, 881 P.2d 467, 469 (Colo. App. 1994).

Courts in the Tenth Circuit have held that "clicking 'accept' to the terms of a clickwrap agreement, even when the terms do not appear on the same screen as the 'accept' button but are available with the use of a hyperlink, is sufficient to form a contract." *McGuire*, 2024 WL 3897073, at *15 (collecting cases) (quoting *Nichols v. Google LLC*, No. 23-CV-01022-RMR-NRN, 2023 WL 5938917, at *3 (D. Colo. Sept. 12, 2023), *report and recommendation adopted*, No. 23-CV-01022-RMR-NRN, 2023 WL 9232937 (D. Colo. Oct. 11, 2023)).

Here, the evidence shows that Plaintiff created an account with TeamSnap on April

13

8, 2021. ECF No. 19, ¶ 16; ECF No. 19-2; ECF No. 19-4; ECF No 19-5. A necessary condition of his account creation was clicking the checkbox on the clickwrap agreement that indicated that he agreed to the TOS. ECF No. 19, ¶ 20; ECF No 18-8 (stating "I agree to TeamSnap's Terms of Service"). Clicking the checkbox in the clickwrap agreement was a clear manifestation of Plaintiff's assent to the TOS. *See Pierce,* 981 P.2d at 603; *Nichols*, 2023 WL 5938917, at *3.

Moreover, whether Plaintiff actually read the TOS is immaterial because Plaintiff cannot avoid contractual obligations by claiming that he did not read the agreement. *See Loden*, 881 P.2d at 469. Exhibit F shows the signup screen as Plaintiff would have seen it when he created his account. ECF No. 18-7. Plaintiff would have had to affirmatively check the "I agree" box, immediately next to which is an unambiguous hyperlink in blue text that provides reasonable constructive notice of the TOS. *See McGuire*, 2024 WL 3897073, at *15 (finding a similarly "blue-highlighted hyperlink on the same page as the Create Your Account button" to be sufficient notice). Here, if Plaintiff did not read the TOS, he nevertheless had constructive notice because he would have abstained from inquiry when it ought to have been made. *See Macasero*, 533 P.3d at 989. Consequently, Plaintiff is bound by the TOS.

The Court next reviews whether the TOS create an obligation to arbitrate. They do. The "Arbitration Agreement" (the Agreement) section of the TOS states, in relevant parts:

> All claims and disputes (excluding claims for injunctive or other equitable relief as set forth below) in connection with the Terms, use of any product or service provided by TeamSnap, or related to the processing of personal data, that cannot be

14

> resolved informally or on an individual basis in small claims court shall be resolved by binding arbitration on an individual basis under the terms of this . . . "Arbitration Agreement" . . . . This Arbitration Agreement applies to you and TeamSnap, and to any subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or goods provided under the Terms.
>
> . . .
>
> THE PARTIES HEREBY WAIVE THEIR CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY, instead electing that all claims and disputes shall be resolved by arbitration under this Arbitration Agreement.
>
> . . .
>
> ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED OR LITIGATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS, AND CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.
>
> . . .
>
> This Arbitration Agreement will survive the termination of your relationship with TeamSnap.

*Id.* at 4–5. The TOS also provide that, if TeamSnap updates the TOS, the "continued use of the Services constitutes . . . acceptance of such change(s)."[14] *Id.* at 7.

Courts will enforce an arbitration agreement "as written" unless its language contains an ambiguity, and so like any contract, an arbitration agreement "must be given

---

[14] Defendant updated its TOS on March 5, 2024, i.e., after Plaintiff first agreed to the TOS in April 2021. ECF No. 19 at 6, ¶ 26; ECF No. 18-12 at 9. The updated TOS also contains an arbitration agreement that is substantially the same as the one to which Plaintiff initially agreed. *Id.*, ¶ 27; ECF No. 18-12 at 2, 6–7.

effect according to the plain and ordinary meaning of its terms." *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). The Agreement is not ambiguous, and Plaintiff makes no argument to the contrary. The bolded text in the third paragraph of the TOS summarizes the Agreement's unambiguous terms well: "[t]hese [TOS] . . . require binding arbitration on an individual basis to resolve disputes." ECF No. 18-11 at 2 (emphasis omitted).

Accordingly, because Plaintiff assented to the TOS when he clicked "I accept" on the clickwrap agreement, and because the TOS contains an unambiguous arbitration agreement, a valid arbitration agreement exists.

### C. Arbitrability and the Scope of the Agreement

Now that the Court has found an arbitration agreement exists, the issue becomes whether this dispute falls within the scope of the Agreement. Defendant argues that the Agreement delegates issues of arbitrability to the arbitrator. ECF No. 18 at 8–10. Plaintiff argues that this Court must decide arbitrability. ECF No. 32 at 10. The Court agrees with Defendant.

"Because arbitration is a matter of contract, 'parties can agree to arbitrate arbitrability.'" *Brayman*, 83 F.4th at 832 (quoting *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017)). If there is "clear and unmistakable evidence" that the parties intended to delegate questions of arbitrability to an arbitrator, "a court possesses no power to decide" arbitrability. *Id.* (internal citations omitted).

Defendant bases its argument on the Agreement's by-reference incorporation of the JAMS rules:

> Arbitration shall be initiated through the Judicial Arbitration and Mediation Services, Inc. ("JAMS"), an established

16

> alternative dispute resolution provider ("ADR Provider") that offers arbitration as set forth in this section. If JAMS is not available to arbitrate, the parties shall agree to select an alternative ADR Provider. The rules of the ADR Provider shall govern all aspects of the arbitration, including but not limited to the method of initiating and/or demanding arbitration, except to the extent such rules are in conflict with the Terms. The JAMS Streamlined Arbitration Rules (the "JAMS Rules") governing the arbitration are available online at https://www.jamsadr.com/.

ECF No. 18-11 at 5, 8–9; ECF No. 18-12 at 6. As Defendant notes, ECF No. 18 at 9, JAMS Streamlined Rule 8(b) states:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, *interpretation or scope of the agreement* under which Arbitration is sought, and who are proper Parties to the Arbitration, *shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter*.

*See* https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8 (emphases added).

The Tenth Circuit held in *Belnap* that, "by incorporating the JAMS Rules" into an agreement with similar language as here, the parties "evidenced a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator." 844 F.3d at 1279. This is precisely the case here. Plaintiff argues that *Belnap* is not on point because here, unlike there, "the threshold question of contract formation is in dispute." ECF No. 32 at 10 (citing *Smith v. Aliera Cos., Inc.*, 534 F. Supp. 3d 1345, 1354 (D. Colo. 2021)). However, as discussed above, the Court has determined that the parties entered into a valid and enforceable contract that included the Agreement, which in turn incorporates the JAMS rules by reference.

Accordingly, the Agreement clearly and unmistakably delegates questions of

17

arbitrability to an arbitrator. *See Belnap*, 844 F.3d at 1279. As such, the Court need not (and indeed, cannot) reach Defendant's argument about whether Plaintiff's claims fall within the scope of the Agreement. ECF No. 18 at 10–12; *see Brayman*, 83 F.4th at 832 (stating that "a court possesses no power to decide the arbitrability issue" when there is clear evidence that the parties intended to delegate questions of arbitrability).

### D. Stay Pending Arbitration

Defendant requests that the Court stay these proceedings pending arbitration. ECF No. 18 at 12. The Court grants this request. 9 U.S.C. § 3 (requiring a court to stay proceedings "until such arbitration has been had in accordance with the terms" of a valid arbitration agreement); *see also Nichols v. Google LLC*, No. 23-CV-01022-RMR-NRN, 2023 WL 5938917, at *2 (D. Colo. Sept. 12, 2023) ("Once a court concludes a valid arbitration agreement exists, the FAA mandates a stay of a judicial proceeding 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" (quoting 9 U.S.C. § 3)), *report and recommendation adopted*, No. 23-CV-01022-RMR-NRN, 2023 WL 9232937 (D. Colo. Oct. 11, 2023).

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in PART and DENIES in PART the Defendant's Motion to Compel Arbitration and to Dismiss. ECF No. 18. The Court STAYS further proceedings pending arbitration, and orders this case administratively closed. The parties are ordered to file a joint status report no later than January 26, 2026.

Dated this 30th day of July 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge